UNITED STATES of America, Plaintiff, v. Lon Robert BUTTON, Defendant.

No. 4–71 Cr. 123.

United States District Court, D. Minnesota, Fourth Division.

Sept 2, 1971.

Robert G. Renner, U. S. Atty., by Joseph T. Walbran, Asst. U. S. Atty., for plaintiff.

Kenneth E. Tilsen, St. Paul, Minn., for defendant.

NEVILLE, District Judge.

Defendant registered with his local draft board No. 49 on August 22, 1966. He was subsequently classified I–A and ordered to report for induction on August 6, 1970. The court finds that he willfully and knowingly failed and

refused to submit to induction. He appeared at the induction center, was duly counselled, informed of the punishment that could be meted out and made out and signed a statement in his own handwriting that he refused induction, stating the reasons therefor. An indictment followed giving rise to the present case.

Defendant's claim is that his induction order was and is invalidated by failure of the local board to accord him due process and to find him medically unfit. Defendant claims that he suffers from a condition known as a pilonidal cyst of the type which is disqualifying under Army Regulation 40–501 of February 2, 1970 which reads in part:

"2–35. Skin and Cellular Tissues

The causes for rejection for appointment, enlistment, and induction are—

c. Cysts.

\* \* \* \* \* \*

(2) Cysts, pilonidal. Pilonidal cysts, if evidenced by the presence of a tumor mass or a discharging sinus."

Defendant had his preinduction physical examination on February 13, 1970 and no disqualifying defects were noted. The report signed by the examining doctor does have two or more references to a pilonidal cyst and pilonidal sinuses stating "no drainage". Defendant submitted three letters from his own physician to the effect that the cyst had been incised and drained in September 1967 and again in April 1968, the last such letter concluding "He has had no trouble since".

Defendant's point is that under the regulation above quoted this type of cyst is disqualifying if evidenced either—

(1) by the presence of a tumor mass or

(2) by a discharging sinus.

He points out that a medical report of preinduction physical negates the discharging sinus but does not negate nor note the existence of a tumor mass.

In view of defendant's urging, he was referred by the examining doctor to a consultant, one Dr. Schneck. He found two sinuses, no drainage, no redness, no tenderness. Again, he made no comment on the existence or non-existence of a tumor mass.

■ The court's scope of review in trying a criminal case for failure to submit to induction where a defense of medical unfitness is claimed is to determine whether there is a basis in fact for the action taken by the Local Board.

Specific authority for the principle that the court is limited in its review as to medical fitness or disqualification to the question of the existence of a basis in fact to be found in the registrant's Selective Service File is: Vasilj v. United States, 425 F.2d 1134 (9th Cir. 1970); United States v. Shunk, 438 F. 2d 1204 (9th Cir. 1971). In *Shunk* the court said:

"Defendant presented his fitness contentions to the doctors who conducted his initial selective service examination and those who gave him the required physical inspection at the time he was ordered to report for induction. On both occasions he was found physically acceptable.

There being no indication of arbitrary action or deficiency in prescribed procedure in connection with the described examination and subsequent inspection, the record provides a basis in fact for the determination that defendant was physically fit to be inducted. *See* Vasilj v. United States, 425 F.2d 1134 (9th Cir. 1970).

Absent some highly unusual circumstance, not present here, this left no room for further inquiry at the trial concerning defendant's physical fitness to be inducted. Where an inductee believes he is not physically fit for induction his remedy is not to take the law into his own hands and refuse to step forward, but to seek further in-service medical attention after induction. The trial court did not err in rejecting the offered testimony." 438 F.2d at 1204–1205

Recently the Eighth Circuit Court of Appeals in United States ex rel. Taylor v. Fritz, 446 F.2d 36 (8th Cir. 1971), adhered to this principle in a habeas corpus proceeding, stating:

"An evidentiary hearing was held before the District Court at which time the appellant argued that his induction into the Armed Forces was unlawful because he suffered from a disqualifying medical condition, specifically that he was afflicted with a hearing loss of thirty decibels in both ears. Appellant was found physically acceptable at the preinduction physical and he was classified 1–A. He did not choose to appeal his Selective Service classification. Rather, he appealed the ruling of the Armed Forces Examining and Entrance Station to the Surgeon General, who affirmed that ruling. Appellant submitted to induction and within four days filed the petition for a writ of habeas corpus.

\* \* \* \* \* \*

By bringing this proceeding for habeas corpus, appellant challenges the legality of his detention and custody. To prevail, he must show that his induction was unlawful. In this case, appellant must necessarily attack his Selective Service classification as the alleged wrongful basis for his induction. Appellant cannot, in his present posture, circumvent the scope of judicial review established for Selective Service classification cases by attempting to attack directly the determination of AFEES. *The real issue must necessarily be whether there is a basis-in-fact for his classification.*" [Emphasis added]

■ The court cannot possibly from its own knowledge pass on the physical fitness of any registrant nor can the court know what is or is not a disabling or disqualifying injury. Both the Selective Service organization and the Army retain physicians who examine registrants, the former before induction and the latter for a second time at the In-

duction Center. They make and report their findings and it would not seem to be within the province of a judicial review to attempt to approach the issue *de novo*, particularly on a matter where the defendant has had extensive medical examination and no arbitrary or capricious action appears. Clearly there was a basis in fact for finding defendant medically qualified, and since there is no question but that he wilfully failed to submit to induction, such disposes of the case and requires a finding of guilty.

One or two bizarre matters occurred at the trial which in this court's judgment do not affect the result to be reached. The government called as a witness a doctor from the AFEES (Armed Forces Examining and Entrance Station) and it developed that defendant also had subpoenaed the same doctor. Both sides thus desired his testimony and it was offered without objection. He testified that a pilonidal cyst is a congenital condition formed in the embryo state where in some way the skin overlaps the tailbone forming a sinus or sinuses, sometimes lined with hair. If the cyst becomes infected it requires incision and drainage. He gave his opinion from the record as he saw it as a senior medical officer at the Selective Service Center, that defendant's condition would not have disqualified him from service. The doctor further testified that had there been a tumor mass, such would have been noted by the two or three previous examining physicians, and the absence of such notation indicates a negative finding in that regard. On cross-examination defense counsel suggested that the doctor and the defendant retire from the courtroom for an examination. The government readily agreed and such was done. After the examination the doctor testified that there is a ½ centimeter superficial skin lesion below two sinus holes; that he could see no evidence now of lancing and there presently was no drainage nor tumor mass. He was further asked what was meant by defendant's "P–2

profile" in the selective service file. He stated such indicated, as distinguished from a P–1 profile which is an absolutely health man, that his condition and possibility of difficulty had been noted and that if his condition should bother him materially while in the armed services he would be able to obtain a restricted assignment. The doctor further testified there are men now in the Army with pilonidal cysts.

The court has great doubt that it should have permitted the above procedure because as stated above, the court believes its sole function is to review the Selective Service file to see whether there is a basis in fact for the classification and the action taken. *See* United States v. Shunk, 438 F.2d 1204 (9th Cir. 1971), where the appellate court approved the exclusion of evidence of defendant's physical condition at the time of trial. Assuming *arguendo* however, that the evidence was admissible, the result would not be changed for if the court were to have made a *de novo* finding based on the examination and the testimony of the doctor at trial, the court would be compelled to find that there is no drainage and no tumor mass and therefore the quoted regulation did not and does not disqualify the defendant. Defendant testified himself in his own behalf that from time to time the cyst did bother him, affected his ability to be completely active and that he detected by feel some tumor or mass at the time of trial. The court would find the doctor's testimony more authoritative in this regard.

Accordingly the court finds no grounds for declaring invalid the medical procedures accorded defendant, either on the basis of the material in the file or *de novo* on the evidence adduced in court and thus no grounds to challenge the induction order. The defendant must, therefore, be found guilty of refusing to submit to induction as charged in the indictment. A separate order has been entered.